## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BRIAN OSWALD,                          :    Case No. 1:21-cv-681
                                       :
     *Plaintiff,*                    :    Judge Jeffery P. Hopkins
                                       :
vs.                                    :
                                       :
LAKOTA LOCAL SCHOOL BOARD,             :
                                       :
     *Defendant.*                    :

---

### OPINION AND ORDER

---

Plaintiff Brian Oswald ("Mr. Oswald") is not afraid to speak his mind. On at least three different occasions Mr. Oswald has chosen to speak at the regularly scheduled meetings of the Defendant Lakota Local School Board (the "Board"). At the Board's meeting on June 14, 2021, he spoke against critical race theory. At the Board's meeting on August 5, 2021, he spoke against COVID-19 mask mandates in schools. During both meetings Mr. Oswald spoke in opposition to one or more Board policies, and he did so without interruption because he directed his remarks at the Board's "presiding officer" in compliance with Board Policy No. 0169.1 (the "Public Participation Policy" or the "Policy").

What brings Mr. Oswald before this Court is what occurred at the third Board meeting that he attended. On September 27, 2021, Mr. Oswald was intent on again speaking against the Board's mask requirement as he had done without interruption at the August Board meeting. This time, instead of addressing the "presiding officer," he repeatedly attempted to speak directly with "parents" seated in the audience in violation of the Public Participation Policy. After warning Mr. Oswald of his repeated violations of the Policy, the presiding officer of the Board, Kelley Casper ("Ms. Casper"), terminated Mr. Oswald's speech.

One month later, on October 25, 2021, Mr. Oswald filed the present lawsuit against the Board claiming his right to expression under the First Amendment had been violated. Oswald brings both a facial and as-applied First Amendment challenge to the Public Participation Policy. The primary focus of the Complaint is based upon Ms. Casper's termination of his speech at the September 27, 2021, Board meeting. *See generally*, Doc. 1. In response to the Complaint, the Board filed a Motion for Summary Judgment (the "Motion for Summary Judgment" or the "Motion"). Doc. 35.

As explained below, the Court **GRANTS** Defendant Lakota Local School Board's Motion for Summary Judgment (Doc. 35) and **DISMISSES** Plaintiff Brian Oswald's Complaint (Doc. 1).

## I.     BACKGROUND

In compliance with this Court's Standing Order Governing Civil Cases, the Board attached a document entitled "Proposed Undisputed Facts" ("PUF") (Doc. 35-1) to its Motion. *See* Standing Order Governing Civil Cases (II)(F)(6)(b). Mr. Oswald failed to file a response to the Board's PUF (as required by the Standing Order), so the Court draws the factual background for this opinion largely from the Board's PUF. *Id.* (requiring every brief in opposition to summary judgment to include a document entitled "Response to Proposed Undisputed Facts").

### A.     Public Comment at Board Meetings Is Governed by the Public Participation Policy.

The Board, as the legislative body for the Lakota Local School District, allows members of the public to comment on educational issues at its periodic meetings. PUF, at ¶¶ 1–2; Doc. 23-2, PageID 349. All public comments at meetings of the Board are governed

by Policy No. 0169.1, or the Public Participation Policy. PUF, at ¶¶ 1–2; Doc. 23-2, PageID 456.

The Public Participation Policy prescribes rules to "permit the fair and orderly expression of [public] comment." Doc. 23-2, PageID 456. According to the Policy, these rules are to be administered by the "presiding officer of each Board meeting" when public comment occurs. *Id.* As part of her responsibilities, the presiding officer ensures that all presenters abide by rules including those that require them to:

- "[R]egister their intent to participate . . . upon their arrival at the meeting";

- Limit their statement to three minutes unless extended by the presiding officer;

- Speak only once on the same topic; and

- Direct "[a]ll statements . . . to the presiding officer."

*Id.* The Policy permits the presiding officer to "interrupt, warn, or terminate a participant's statement when the statement is too lengthy, personally directed, abusive, obscene, or irrelevant." *Id.* at PageID 457. It also permits the presiding officer to "request any individual leave the meeting when that person does not observe reasonable decorum or is disruptive to the conduct of the meeting," and "request the assistance of law enforcement in the removal of a disorderly person when that person's conduct interferes with the orderly progress of the meeting." *Id.* The provisions of the Public Participation Policy involving the presiding officer are central to the case *sub judice*.

**B.    Mr. Oswald Speaks Against Board Policies at the June and August Meetings of the Board.**

Mr. Oswald is a resident of Butler County, Ohio, and in recent years has taken a strong interest in certain policies promulgated by the Board. Doc. 23, PageID 309–10, 331. This

interest resulted in his participation during the public comment period of meetings held by the Board. PUF, at ¶ 1; Doc. 23, PageID 326.

Oswald first spoke to the Board at the June 14, 2021 Board meeting (the "June Meeting"). PUF, at ¶ 5; Doc. 23-2, PageID 456. During his allotted three minutes, Mr. Oswald spoke against Lakota School District's diversity, equity, and inclusion committee and the Board's alleged promotion of "critical race theory." PUF, at ¶ 5; Doc. 23-4, PageID 462–64. As required under the Public Participation Policy, Mr. Oswald directed his speech to the presiding officer and was not interrupted while expressing his views at the June Meeting. PUF, at ¶¶ 5, 20; Doc. 23, PageID 364–65; Doc. 23-4, PageID 462–64; Doc. 34, PageID 692.

At the Board meeting on August 5, 2021 (the "August Meeting"), Mr. Oswald again registered to speak. PUF, at ¶ 6; Doc. 23, PageID 366–67; Doc. 23-5, PageID 468–70. During his allotted three minutes, Mr. Oswald spoke against the Board's imposition of a district-wide mask mandate. PUF, at ¶ 6; Doc. 23-5, PageID 468–70. As before, Mr. Oswald directed his speech to the presiding officer and was not interrupted while expressing his views at the August Meeting. PUF, at ¶¶ 6, 20; Doc. 23, PageID 366–67; Doc. 23-5, PageID 468–70; Doc. 34, PageID 692.

### C. The Presiding Officer Terminates Mr. Oswald's Speech After He Refuses to Direct His Speech to the Presiding Officer at the September Meeting.

Mr. Oswald also registered to speak at the September 27, 2021, meeting of the Board (the "September Meeting"). PUF, at ¶ 8; Doc. 23, PageID 369. Ms. Casper was the presiding officer of that meeting. PUF, at ¶ 8; Doc. 24, PageID 525. Instead of addressing the presiding officer, however, like he had done at the June and August Meetings, Mr. Oswald began his speech by declaring that he was going to speak directly to the parents in the audience. PUF, at ¶ 9; Doc. 23-7, PageID 475; Doc. 24, PageID 522. He then turned away from the presiding

4

officer to face the parents and audience members and began his remarks. *Id.* Thereafter, Ms. Casper interrupted Mr. Oswald and reminded him that he was required to address the presiding officer of the Board. PUF, at ¶ 9; Doc. 23-7, PageID 475. Mr. Oswald ignored Ms. Casper's warnings to redirect his remarks to the presiding officer—six times in total—and continued to address the parents. PUF, at ¶¶ 9–13; Doc. 23-7, PageID 475–77.

After informing Mr. Oswald that the Public Participation Policy requires him to address the presiding officer of the Board three more times, Ms. Casper requested that the law enforcement officer in the room remove Mr. Oswald. PUF, at ¶¶ 9–13; Doc. 23-7, PageID 475–77. Ms. Casper stated that Mr. Oswald "forfeited [his] time because [he] did not follow" the requirement that he only address the presiding officer. Doc. 23-7, PageID 476. Mr. Oswald eventually left the podium on his own volition. Doc. 23, PageID 334.

### D. Mr. Oswald Files This Lawsuit.

A month after this encounter at the September Meeting, Mr. Oswald filed suit against the Board seeking monetary and injunctive relief. *See* Doc. 1. In the Complaint, Mr. Oswald alleges that the Public Participation Policy, both facially and as applied to him, restricts speech in violation of the First Amendment of the United States Constitution. *Id.* The Board has since filed its Motion for Summary Judgment seeking to have those claims dismissed. Doc. 35.

## II. STANDARD OF REVIEW

"The 'party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate*

*Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

But the non-moving party cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket and emphases omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). In other words, the dispute must be "genuine" (*i.e.*, supported by evidence) and go to a "material fact" (*i.e.*, a fact that could matter to the outcome).

After reviewing the evidence in the record and presented in the only PUF submitted (the one by the Board), the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52). In making that determination, though, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

## III.   LAW AND ANALYSIS

Mr. Oswald asserts two First Amendment challenges. First, he argues that the language of the Public Participation Policy, which allows the presiding officer to restrict statements that are "*personally directed, abusive, obscene, or irrelevant*," is unconstitutional on its

face because it violates the First Amendment. Doc. 36, PageID 735 (emphasis in original).[1] Second, he contends that the Public Participation Policy, as applied to him in this case, violates the First Amendment because the Board weaponized the Policy's "presiding officer provision"—or the requirement that speakers address the "presiding officer"—to obstruct his criticism of the mask-mandate policy. *Id.* at 733–34.

In return, the Board argues that the Court need not reach the merits of any of Mr. Oswald's arguments because he does not have standing to bring any First Amendment claims. Doc. 35, PageID 710–12. According to the Board, even if Mr. Oswald does have standing, his facial challenge is moot because the language of the Public Participation Policy Mr. Oswald deemed offensive has been revised. *Id.* at PageID 712. Likewise, the Board contends that Mr. Oswald's as-applied challenge fails because the presiding officer provisions of the Policy are constitutionally permissible time, place, or manner restrictions under well-established First Amendment principles. *Id.* at PageID 709.

The Court will first address the threshold issue of standing followed by the merits of any remaining claims.

## A.    Mr. Oswald's Standing to Bring His First Amendment Claims.

Article III of the Constitution only allows courts to resolve constitutional issues when the plaintiff has standing—or when necessary to decide the legal rights of litigants in live "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1; *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022) (en banc). Because Mr. Oswald challenges the Public Participation Policy, Article III requires Mr. Oswald to prove his "standing" to maintain a claim in the first

---

[1] Because it is unclear from his Complaint, the Court construes this language as the text Oswald is contesting, given that Oswald emphasizes it most in his briefing. *See* Doc. 36, PageID 735.

instance to challenge the Policy. *Davis v. Colerain Twp.*, 51 F.4th 164, 171 (6th Cir. 2022). Under the three-part test for standing, Mr. Oswald must establish that: (1) he has (or will) suffer an injury; (2) the Public Participation Policy likely caused (or will cause) the injury; and (3) his requested relief likely would redress it. *Id.* (citing *Ass'n of Am. Physicians & Surgeons v. U.S. FDA*, 13 F.4th 531, 537 (6th Cir. 2021)).

The Court finds two additional legal components of the standing framework applicable to Mr. Oswald's claims. First, as it pertains to summary judgment, Mr. Oswald must present enough evidence to create a genuine issue of material fact over *all* three standing elements. *Id.* (citing *McKay v. Federspiel*, 823 F.3d 862, 867–68 (6th Cir. 2016)). Conclusory allegations about a past injury or vague allegations about a future one will not suffice at this stage. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

Second, Mr. Oswald cannot establish standing "in gross." *Davis*, 51 F.4th at 171 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006)). In other words, Mr. Oswald must prove standing's elements for each claim *and* remedy. *Id.* For example, a claim of past injury generally permits a plaintiff to seek only the traditional remedy for past harm— damages. *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–10 (1983)). That same previously harmed plaintiff may not seek a forward-looking remedy—like an injunction— without evidence that the harmful conduct is likely to reoccur. *Id.*

The Court will first address whether Mr. Oswald has standing to bring his facial challenge, followed by an analysis of his as-applied challenge.

    i.    **Mr. Oswald Lacks Standing for His Facial Challenge and Request for Injunctive Relief Because He Has Failed to Demonstrate That Any Alleged Harm Will Reoccur.**

Starting with Mr. Oswald's facial challenge, the Court finds that Mr. Oswald has not established standing for his facial challenge or his related request for injunctive relief.[2] In *Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014), the Supreme Court recognized that "[a]n allegation of future injury may" satisfy the injury-in-fact requirement if the alleged "threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Id.* at 158 (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 n. 5 (2013)). The "certainly impending" test generally requires proof that a plaintiff plans to engage in conduct arguably proscribed by the regulation at issue and that there is a credible threat the defendant will enforce the regulation against the plaintiff. *See Id.* at 161–64*; McKay*, 823 F.3d at 867. To prove standing to sue, Oswald must offer evidence demonstrating the presence of "certainly impending" speech that would "arguably [be] proscribed by" the Public Participation Policy, and the Board plans to reapply the Policy prospectively to terminate his speech in a manner violative of the Frist Amendment. *See Davis*, 51 F.4th at 172. Mr. Oswald has made no such showing.

Mr. Oswald's facial challenge seeks injunctive relief "enjoin[ing] the School Board from continuing to punish [him] for engaging in protected speech, restraining his speech, chilling his speech, and fabricating rules," as well as enjoining the Board from "enforc[ing] its

---

[2] It is unclear from Mr. Oswald's Complaint which of the two claims (*i.e.*, his facial First Amendment challenge or his as-applied First Amendment challenge) that each of Oswald's requested remedies (*i.e.*, injunctive relief and compensatory damages) apply to. However, since Oswald's request for injunctive relief involves the *future* enforcement of the Public Participation Policy, the Court construes the injunctive relief to relate to the facial challenge. And because the compensatory damages portion of the Complaint relates to the past application of the Public Participation Policy, the Court construes the compensatory damages portion to apply only to the as-applied challenge.

unconstitutionally vague, or overbroad and content-based rules." Doc. 1, PageID 6. But Oswald's challenge necessarily fails under a *Davis* analysis because he testified that he has no future plans to speak at another Board meeting. Doc. 23, PageID 356–59. Given Oswald's stated plans, his case sorely lacks any evidence of a "certainly impending" injury or "substantial risk that harm will occur." *See Susan B. Anthony List,* 134 S. Ct. at 2341. Under the circumstances, nothing that Oswald might say at a future Board meeting, regardless of whether it is controversial or not, will ever be restricted by the presiding officer because the remarks could be labelled  "personally directed, abusive, obscene, or irrelevant."[3] Doc. 36, PageID 735 (quoting Doc. 23-2, PageID 457). In sum, Oswald has not shown that he will likely suffer any injury caused by the Public Participation Policy that the relief he requests— an injunction—will likely redress. *See Davis,* 51 F.4th at 171.

As further proof of the Board's constitutionally permissible use of the Policy relative to Oswald's speech, Ms. Casper testified that she never considered Mr. Oswald's comments at the June and August Meetings to violate the Public Participation Policy—a contention Mr. Oswald readily concedes. Doc. 36, PageID 729. Indeed, the record demonstrates that Oswald's first two speeches as a registered participant at Board meetings (in June and August) went uninterrupted and no part of his speeches were ever terminated by the presiding officer despite criticism of Board policies. Doc. 23-4, PageID 461–65; Doc. 23-5, PageID 467–70. Curiously, even though Oswald gave the same or a similar speech in August and September

---

[3] The Court does note that while Oswald seems to be challenging use of the term "obscene" in the Public Participation Policy, it has long been the case that the state may prohibit obscene language in a public forum. *McElhaney v. Williams,* 81 F.4th 550, 557 (6th Cir. 2023) ("[T]here are a handful of categories of speech for which content-based prohibitions may be permissible. But it is a short and somewhat notorious list. It includes 'speech expressed as part of a crime, obscene expression, incitement, and fraud.'") (quoting *Novak v. City of Parma,* 932 F.3d 421, 427 (6th Cir. 2019)). Therefore, whether such a restriction is proper is inapplicable to the Court's analysis here.

opposing the district mask mandate implemented by the Board, Oswald asserts that the true reason Ms. Casper terminated his September speech was because his comments were "adverse to the views of the Board"—a category of speech not expressly addressed by the text of the Public Participation Policy. Doc. 36, PageID 731. Mr. Oswald's contention falls well short of being logical.

To begin, Mr. Oswald argues that the Board sought to suppress his ability to express his views critical of Board policies, even though he had twice before opposed Board policies at meetings and the Board did not employ the Public Participation Policy to terminate his comments. Indeed, the Policy was only used to terminate his comments when he violated the prohibition against addressing the audience and instead directed his remarks at the presiding officer. It is clear from the evidence, therefore, that the Policy was being applied to conduct, not content. Oswald has also not shown that the Policy purports to regulate his past speech. Criticizing rules such as mask mandates promulgated by the Board clearly is not proscribed by the Public Participation Policy as Oswald claims. Assuming *arguendo* that "the content of [Mr. Oswald's] past speech [i]s evidence of the probable content of [his] future speech, [Mr. Oswald] has not shown that the [Policy] would cover that future speech" in a manner violative of important First Amendment principles of free expression in a limited-public forum. *See Davis*, 51 F.4th at 173.

For the reasoned stated, Mr. Oswald has not presented sufficient evidence to create a genuine issue of material fact establishing that he possesses standing to obtain injunctive relief or for asserting a valid facial challenge to the Public Participation Policy. Summary judgment is therefore **GRANTED** regarding Mr. Oswald's facial First Amendment challenge and related request for injunctive relief against enforcement of the Policy.

ii.  **Even If Mr. Oswald Could Establish Standing, His Facial Challenge Is Moot.**

And even if Mr. Oswald had standing to bring his facial challenge in federal court, Article III requires a real dispute to exist at all stages of the litigation. *See Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997). This rule exists because when later events eliminate or make it impossible for the court to grant relief, the case has become moot, and a court must dismiss it. *See Resurrection Sch.*, 35 F.4th at 528. "If, for example, a defendant stops engaging in the conduct that threatens to harm the plaintiff, this choice could moot a request for an injunction against that conduct." *Davis*, 51 F.4th at 174 (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91–92 (2013)). This scenario typically occurs when a legislature repeals a challenged law, or an executive officer repeals a challenged regulation. *See Resurrection Sch.*, 35 F.4th at 528; *see also Thompson v. Whitmer*, No. 21-2602, 2022 WL 168395, at *3 (6th Cir. Jan. 19, 2022) (citing cases).

The Sixth Circuit has cautioned, however, that courts ought to be skeptical of whether the repeal or amendment of challenged conduct has mooted a case. *Davis*, 51 F.4th at 174 (citing *Already*, 568 U.S. at 91). In these instances, a defendant or governmental entity must show that it is "absolutely clear" that the rescinded conduct could not "reasonably be expected" to happen in the future. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). It must be noted that in comparison to other types of defendants, governments have an easier time satisfying this test because it is presumed that they will not resume their challenged conduct unless objective evidence suggests that they have made a bad faith change to avoid judicial review. *See Thomas v. City of Memphis*, 996 F.3d 318, 324–25 (6th Cir. 2021). This presumption gains even more strength if the government has changed course

12

through a formal process because the formalities involved make it more difficult to reinstitute the old policy later. *See id.*

Furthermore, when the government has made a change because of something external to the plaintiff's suit, a case is even more likely to be deemed moot. *See Thompson*, 2022 WL 168395, at *3 (citing *Geduldig v. Aiello*, 417 U.S. 484, 491–92 (1974)). "In that scenario, it is unlikely that the suit's dismissal would cause the defendant to return to its old ways because the defendant made the change for a different reason." *Davis*, 51 F.4th at 175.

That same logic and rationale expressed in *Davis* apply here. Oswald's anti-mask speech terminated by the presiding officer occurred at the September Meeting. On November 29, 2021, the Board revised the Public Participation Policy by excising several of the terms in the Policy that allowed the presiding officer to terminate a speaker's remarks if they were considered "too lengthy," "personally directed," "abusive", or "irrelevant." *See* Doc. 24-3, PageID 536–38. The table below shows those changes to the Policy promulgated by the Board:

| Original | Revised |
|---|---|
| The presiding officer may . . . interrupt, warn, or terminate a participant's statement when the statement is too lengthy, personally directed, abusive, obscene, or irrelevant . . . . | The presiding officer may . . . interrupt, warn, or terminate a participant's session when they make comments that are repetitive, obscene, and/or comments that constitute a true threat (i.e., statements meant to frighten or intimidate one (1) or more specified persons into believe that they will be seriously harmed by the speaker or someone acting at the speaker's behest). |

*Compare* Doc. 23-2, PageID 457 *with* Doc. 24-3, PageID 538. The minutes for the School Board's November 29, 2021, meeting show that the Board had voted 4-1 to approve this

revision in a formal "legislative-like" meeting.[4] *See Davis*, 51 F.4th at 175 (citing *Thomas*, 996 F.3d at 326). While it may seem convenient that the Public Participation Policy was revised shortly after Mr. Oswald's suit was filed on October 25, 2021, a closer look at the history of the amendments demonstrates that these changes were proposed as early *as June 14, 2021—* for reasons completely unrelated to  Oswald's decision to comment on mask mandates at the September Meeting or, importantly, institute this lawsuit.[5] It follows that the Board began revising the Public Participation Policy in light of an "external" factor that was completely separate from Mr. Oswald's yet-to-be-filed lawsuit. *See Davis*, 51 F.4th at 175 (citing *Thompson*, 2022 WL 168395, at *3). As such, nothing in the record makes the Court suspicious that the Board's amending the Public Participation Policy was done with any lack of sincerity or only as a measure to avoid judicial scrutiny. The record also shows that it is highly unlikely that the Board will attempt to reinstate the contested language in the future. *See* Doc. 34, PageID 693 (Ms. Casper stating that she is "not currently aware of any attempts by the Board to reinstate" the excised language which had allowed the presiding officer to terminate a speech if the speaker's remarks were ever judged "too lengthy," "personally directed," "abusive", or "irrelevant").

Under the circumstances, the Court finds that the November 29, 2021, amendments adopted by the Board to the Public Participation Policy have mooted Mr. Oswald's facial challenge and claim for injunctive relief.

---

[4] Courts "can take judicial notice of, for example, administrative rules, regulations, and orders, and certain judicial and public records." *Davis*, 51 F.4th at 176. The November 29, 2021, Lakota School Board meeting minutes are publicly available at https://go.boarddocs.com/oh/lakota/Board.nsf/files/C9NL3R549E41/$file/November%2029%202021.pdf (last visited May 23, 2024).

[5] *See* Lakota School District Meeting Minutes, (Jun. 14, 2021) https://go.boarddocs.com/oh/lakota/Board.nsf/files/C49LW957BCD3/$file/June%2014%202021.pdf (last visited May 23, 2024).

### iii. Mr. Oswald Has Standing to Bring His As-Applied Challenge and Request for Damages.

Next, the Court will address Mr. Oswald's as-applied First Amendment challenge to the Public Participation Policy along with his request that the Court order the Board—ostensibly the Lakota Local School District—to pay him monetary damages. Unlike before, the Court finds that Mr. Oswald meets all three *Davis* standing elements to mount this challenge. As an initial matter, Mr. Oswald contends that he was injured when the presiding officer terminated his speech at the September Meeting, which, in effect, "chill[ed] his speech," in violation of his First Amendment right of free expression. Doc. 36, PageID 734; Doc 1, PageID 3–6; *see also McKay* 823 F.3d at 869 (stating that past conduct accompanied by allegations of subjective chilling of speech establishes an injury-in-fact under the First Amendment).

With respect to the second *Davis* factor, Mr. Oswald argues that his alleged injury occurred because the presiding officer, Ms. Casper, terminated his speech pursuant to the Public Participation Policy. Doc. 36, PageID 735. This fact is not in dispute. Ms. Casper has admitted that she terminated Mr. Oswald's speech because he refused to follow the Public Participation Policy requiring speakers to address the presiding officer. Doc. 34, PageID 693.

Lastly, Oswald's alleged injury can be redressed in a lawsuit because the relief requested—monetary damages—is the traditional remedy for past harm. *See* Doc. 1, PageID 6; *see also Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1027 (6th Cir. 2024) (finding that the plaintiff's request for damages redresses alleged retrospective harm).

It is apparent from a review of each of the *Davis* factors that there exists adequate evidence in the record to establish all three standing elements. Mr. Oswald has met his burden of presenting an as-applied challenge to the Public Participation Policy and potentially

obtaining retroactive relief. Mr. Oswald's ability to claim standing to challenge the application of the Policy under an as-applied theory, however, is only the first step. Mr. Oswald must still be able to show that the Board applied the Policy in a manner depriving him of his First Amendment right to freedom of expression in order to establish entitlement for relief. In making this determination, this Court must remain mindful that not all expression one wants to make in a limited-public setting qualifies as protected speech under the First Amendment.

**B.    Mr. Oswald's As-Applied Challenge Fails As a Matter of Law Because the Policy Is a Proper Manner Restriction.**

The First Amendment of our U.S. Constitution holds that "'Congress shall make no law' . . . 'abridging the freedom of speech.'" *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019)). "The Fourteenth Amendment limits state and local governments in the same manner." *Id.* "The Free Speech Clause limits the government's power to regulate speech on public property." *Am. Freedom Def. Initiative v. Suburban Mobility Auth.*, 978 F.3d 481, 485 (6th Cir. 2020). Those limits "var[y] depending on the forum where the speech occurs." *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021). A limited-public forum exists where the government opens its property "for certain groups or for the discussion of certain topics." *Id.* (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

The public-comment period of a school board meeting is a limited-public forum. *See Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, n.7 (1983). "Within such a forum, the government may regulate the time, place, and manner of speech so long as the regulation is (1) 'content-neutral,' (2) 'narrowly tailored to serve a significant governmental interest' and (3) 'leave[s]

open ample alternative channels for communication of the information." *Lowery*, 586 F.3d at 432 (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293, 295 (1984)) (cleaned up).

The Board argues that Mr. Oswald's applied First Amendment challenge fails because the Public Participation Policy, as applied to Oswald at the September Meeting, was a constitutionally permissible restriction on the manner of speech. Doc. 35, PageID 708–09. Mr. Oswald, on the other hand, argues that his speech was terminated because of its content— more specifically because his remarks were critical of the Board's adoption of a district-wide mask mandate. Doc. 36, PageID 734. As explained below, the Court rejects Mr. Oswald's as-applied First Amendment challenge.

### i.     The Policy As Applied to Mr. Oswald Is Content-Neutral.

A policy is content-neutral on its face if it is "justified without reference to the content" of the speech. *Cmty. for Creative Non-Violence*, 468 U.S. at 293. As the Sixth Circuit instructs, policies with a stated purpose of efficiency and access (such as ones that "allow everyone a fair and adequate opportunity to be heard"; or that "assure that the regular agenda of the Board is completed"; or that "recognize the voluntary nature of the Board['s] time and use that time efficiently,") have "nothing to do with the subject of an individual's proposed speech and everything to do with conducting orderly, productive meetings." *Lowery*, 586 F.3d at 433.

The rule relevant to Mr. Oswald's dispute is the Public Participation Policy's presiding officer provision—or its requirement that "[a]ll statements [by commentors] shall be directed to the presiding officer." Doc. 24-3, PageID 534. The requirement to direct speech to a board member has everything to do with the manner of speech rather than its content. As such, the

text of the Public Participation Policy's presiding officer provision clearly supports a finding that it is content-neutral.

The Public Participation Policy and the presiding officer provision's overall purpose is to "permit the fair and orderly expression of" public comments. Doc. 24-3, PageID 534. Similarly, as the Board argues and as the testimony of both the former superintendent of the school district and Ms. Casper demonstrates, the purpose of the presiding officer provision is to reduce disruption at Board meetings and to promote efficient, orderly, and productive meetings. Doc. 33, PageID 646 (former superintendent Miller's testimony); Doc. 34, PageID 693 (Ms. Casper's testimony). This justification has "nothing to do with the subject of an individual's speech and everything to do with conducting orderly and productive meetings." *E.g., Lowery*, 586 F.3d at 433. For this reason alone, the Court finds that the presiding officer provisions of the Policy limiting the manner of participants commenting at Board meetings is a facially content-neutral restriction on speech—and one that is therefore constitutionally permissible.

Even though the presiding officer provision is content neutral on its face, the question remains whether it was content neutral *as applied* to Mr. Oswald at the September Meeting. "A facially constitutional time, place, or manner restriction will be unconstitutional as applied where the restriction is content neutral on its face but has been applied in a viewpoint specific manner." *Teufel v. Princeton City Sch. Dist. Bd. of Educ.*, No. 1:12-cv-355, 2013 WL 143808, at *12 (S.D. Ohio Jan. 11, 2013).

Ms. Casper, the Board member in charge at the September Meeting, testified that she terminated Mr. Oswald's speech pursuant to the provision requiring statements to be directed towards the "presiding officer." Doc. 34, PageID 693. Ms. Casper further testified that she:

> [O]nly interrupted, warned, and eventually terminated Mr. Oswald's public statement at the September 2021 meeting because he repeatedly violated the [Public Participation Policy]'s requirement of directed statements to the presiding officer. Mr. Oswald's violation of that policy, despite several warnings, was disruptive to the conduct of the meeting. Had he complied with the policy I would have permitted Mr. Oswald to present his public statement for three minutes without interruption as I had done in the past.

*Id.* at PageID 693. In an obvious concession, Mr. Oswald testified that "there were a few occasions when Ms. Casper told [him] to address the presiding officer," and that he did not abide by that directive because he was "using [his] three minutes of free speech to address *everybody* in that room." (Emphasis added.); Doc. 23, PageID 374–75. In short, there is no genuine dispute of material fact that Mr. Oswald failed to follow the content-neutral rule requiring him to direct his comments towards the presiding officer, and that the presiding officer subsequently terminated his speech because Mr. Oswald refused to follow protocol.

Indeed, the transcript of the September Meeting shows that Mr. Oswald began his remarks by first expressing that he was going to speak *directly* with the parents and then turned to face the audience. Doc. 23-7, PageID 475; Doc. 24, PageID 522. Further, despite receiving numerous warnings from the presiding officer, Mr. Oswald proceeded to face and address the parents in audience at the September Meeting. Doc. 23-7, PageID 475–77.[6] Only after informing Mr. Oswald that the Public Participation Policy required him to address the Board four times did Ms. Casper request that the law enforcement officer in the room remove Mr.

---

[6] The record reflects that Mr. Oswald attempted to address the parents on six different occasions:

- "I'm going to speak with the parents."
- "I'm going to speak to the parents now wearing masks."
- "Now, parents, if the masks work, then the masks work."
- "Now, parents, if you want your kids unmasked, go ahead and unmask them."
- "Parents, there is no mandate out there ordering . . . ."
- "I'm speaking to all the other parents up there too."

Doc. 23-7, PageID 475–77.

Oswald. *Id.* It is no wonder that Ms. Casper reached the conclusion that Mr. Oswald "forfeited [his] time because [he] did not follow" the requirement under the Public Participation Policy to address the presiding officer and asked that he be removed. *Id.* at PageID 476. Given that Mr. Oswald eventually left the podium by his own volition, the removal provisions of the Policy did not need to be enforced. Doc. 23, PageID 334. The record thus shows that the presiding officer provision of the Policy was applied without any regard to the content of Mr. Oswald's speech.

Nevertheless, Mr. Oswald strenuously contends that the Board engaged in viewpoint discrimination against him. Oswald argues that the Board or the presiding officer sought to "silence" him at the September Meeting because he was intent on speaking against the district-wide COVID-19 mask mandate. Doc. 36, PageID 733–34. "[A] defendant's motive is a question of fact that must be determined by a jury, but to survive [the Board's] motion for summary judgment [Mr. Oswald] must present sufficient evidence to allow a jury to find that [the Board] intended to silence h[is] viewpoint." *Timmon v. Wood*, 633 F. Supp. 2d 453, 463 (W.D. Mich. 2008) (citations omitted). Mr. Oswald has failed to provide even a scintilla of evidence supporting this hypothesis.

The record shows that Mr. Oswald was permitted to express views antagonistic or critical of Board policies without interruption at both the June and August Meetings with one key difference from the September Meeting: Mr. Oswald addressed the parents in the audience at the September Meeting rather than the presiding officer. Doc. 23, PageID 364–66. Further undermining Mr. Oswald's argument is the fact that he spoke against the same district-wide mask mandate at the August Meeting—precisely the type of speech Oswald claims that he was silenced for presenting at the September Meeting. PUF, at ¶ 6; Doc. 23-5,

PageID 468–70. It strains credulity for Mr. Oswald to now claim that the Board intended to silence him for his views when the only difference between the August and September Meetings that occurred is his own failure to follow the rule requiring him to address his comments only to the presiding officer of the Board.

Separately, Oswald makes much of the argument that the Policy was not evenly applied. Doc. 36, PageID 734. He contends that the former superintendent, who made comments at the September Meeting concerning the number of COVID-19 cases in the school district, was permitted to speak directly to the audience. *Id.* The video recording referenced by Mr. Oswald in his papers shows that the former superintendent began his comments by addressing audience members before being told by the presiding officer to address the Board— a directive which he immediately followed.[7] Nonetheless, the fact that the Board did not immediately terminate the former superintendent's remarks under the Public Participation Policy does not necessarily mean that Oswald's First Amendment right to free expression was infringed. Even viewed in a light most favorable to Mr. Oswald, it is evident from a review of the entire record that the presiding officer did not seek to terminate Oswald's expression of his views simply because they were contradictory to Board policies. And this Court, like others presented with similar constitutional challenges, will not "make First Amendment-related speculations on the hidden motives of" a governmental entity, like the Board, without some proof that there was an attempt to apply a policy so as to restrict speech simply because it might, at the time, have been considered unpopular or controversial. *Ater v. Armstrong*, 961 F.2d 1224, 1229 (6th Cir. 1992).

---

[7] Lakota Local Schools, *September 27, 2021: Lakota Board of Education Regular Meeting*, YOUTUBE (Sep. 29, 2021), https://www.youtube.com/watch?v=DHy-Dhd6NQU (the former superintendent's comments are timestamped at about 00:49:10–00:55:00).

Based on the above, the Court finds there is no genuine dispute of material fact. The Public Participation Policy, as applied to Oswald, was a valid, content-neutral restriction placed on speech in a limited-public forum that was permissible under the First Amendment.

### ii.    The Policy Is Narrowly Tailored to Serve a Significant Governmental Interest.

Upon finding that the presiding officer provision of the Policy is content neutral, the Court must now assess whether it narrowly serves a significant governmental interest. Mr. Oswald makes no argument concerning this factor. *See* Doc. 36, PageID 733–34. The Board, however, argues that "the purpose of the restriction is to reduce disruption at board meetings and to promote efficient, structured, and productive meetings." Doc. 35, PageID 708–09. As discussed above, the record reflects that this is exactly the purpose for the Board maintaining the Public Participation Policy as a whole. This rationale satisfies the government-interest prong. *See Lowery*, 586 F.3d at 433 ("Unstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard."); *Ison*, 3 F.4th at 895–96 (finding that a pre-registration requirement to speak at school board meetings serves a governmental interest of efficient and orderly meetings).

The presiding officer provision of the Policy is also narrowly tailored to serve legitimate governmental interests. "Narrow tailoring . . . requires not 'the least restrictive or least intrusive means' of serving a government interest, but only that the government's interest 'would be achieved less effectively absent the regulation.'" *Ison*, 3 F.4th at 896 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798–99 (1989)). The Court may not invalidate a time, place, manner regulation merely because it disagrees with the legislature on the "most appropriate method for promoting [its] interest[]," but regulations cannot "burden substantially more speech than is necessary." *Id.* (quoting *Ward*, 491 U.S. at 799–800).

With few exceptions, the presiding officer provision of the Public Participation Policy allows most forms of speech. It merely requires speakers to direct their public remarks to the "presiding officer," or the member of the Board leading the meeting. Doc. 24-3, PageID 534. Nothing in the Public Participation Policy's presiding officer provision constitutes an unconstitutional "wholesale ban" on speech. *Cf. Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382, 388 (6th Cir. 1996). And, as this Court in the preceding paragraphs has determined, the provision relates to articulated and important governmental interests of maintaining order and efficiency and allowing access for everyone—not just Oswald—to be given a fair and adequate opportunity to be heard. *See Lowery*, 586 F.3d at 433; *cf. Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 168–69 (2002); *Miller v. City of Cincinnati*, 622 F.3d 524, 536 (6th Cir. 2010); *Ison*, 3 F.4th at 896. Mr. Oswald has failed to point the Court to any evidence that amounts to a genuine disagreement concerning whether the presiding officer provision is narrowly tailored which might necessitate a factual determination by a jury.

### iii. The Policy Leaves Open Alternative Channels for Communication.

Finally, the Court must consider whether the presiding officer provision leaves open ample alternative channels of communication for a speaker to express herself. The Sixth Circuit instructs that "[a]n alternative channel of communication can be adequate even when the speaker is denied its best or favored means of communication." *Harrington v. City of Brentwood*, 726 F.3d 861, 865 (6th Cir. 2013) (citing *Phelps-Roper v. Strickland*, 539 F.3d 356, 372 (6th Cir. 2008)). Thus, "[t]he key for purposes of the adequate-alternatives analysis is whether the proffered alternatives allow the speaker to reach its intended audience." *Id.* (citing *Phelps-Roper*, 539 F.3d at 372; *Prime Media, Inc. v. City of Franklin*, 181 F. App'x 536, 541 (6th

Cir. 2006)). The Supreme Court has found that this requirement is easily met when, for example, a restriction "continues to permit expressive activity in the [public forum] and has no effect on the quantity or content of that expression beyond regulating the extent of amplification." *Ward*, 491 U.S. at 802.

Although the Policy's presiding officer provision restricts who speakers may address when utilizing their allotted three minutes of time, that provision does not restrict speakers in any fashion prohibited by the First Amendment. The presiding officer provision—and in a broader sense the Public Participation Policy itself—was not applied to Mr. Oswald because his speech was "abusive," "obscene," "irrelevant," or "inappropriate." Doc. 36, PageID 735 (citing Doc. 24, PageID 521–22). And, like Mr. Oswald accomplished on two previous occasions, the presiding officer provision permits him to speak freely on controversial topics at Board meetings without any restrictions beyond regulating who he may address and how long he may address them.

Nothing the Board has undertaken prevents Mr. Oswald (or anyone else for that matter) from being able to speak out against mask mandates or any other hot-button issues to reach his intended audience. The way the provision was applied in this instance had nothing to do with the content, quantity, or quality of what Mr. Oswald wanted to say, but everything to do with the way he wanted to say it. There has been no showing that Mr. Oswald has been foreclosed from speaking critically about any current or future Board policy in his preferred forum—meetings of the Lakota Local School Board.

Based on the foregoing, the Board is **GRANTED** summary judgment on Mr. Oswald's First Amendment as-applied claim.

## IV.     CONCLUSION

For the reasons stated, the Court **GRANTS** the Motion for Summary Judgment of Defendant Lakota Local School Board (Doc. 35) and **DISMISSES** Plaintiff Brian Oswald's Complaint (Doc. 1). The Court notes that Mr. Oswald's facial challenge under the First Amendment is dismissed **WITHOUT PREJUDICE** because the Court lacks jurisdiction to decide the merits of his claim. *See Davis v. Colerain Twp.*, 51 F.4th 164, 176 (6th Cir. 2022). Alternatively, Mr. Oswald's as-applied First Amendment challenge is dismissed **WITH PREJUDICE**. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**SO ORDERED**

August 9, 2024

Jeffery P. Hopkins
United States District Judge

25